# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AZIZ FETINCI, ARMADA TRUCKING
SERVICES, LLC, MUHAMED FETIC,
EXPRESS LINE LOGISTICS, INC.,
and KENAN HUJDUR,

Case No. 2:23-cv-11720
Hon. Robert J. White
Mag. Kimberly G. Altman

       Plaintiffs,

v

RAYCO LOGISTICS, LLC, a Michigan
company, BRAVO LOGISTICS, LLC, a
Michigan company, and RAY LAAMARI,

       Defendants.

---

HERTZ SCHRAM PC
By:   Steve J. Weiss (P32174)
      Daniel W. Rucker (P67832)
*Attorneys for Plaintiffs*
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000
sweiss@hertzschram.com
drucker@hertzschram.com

Ray Laamari, in pro per
35765 Groesbeck Hwy.
Clinton Twp, MI 48035
(586) 610-1123
ray@raycologisticsllc.com

---

## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
## AND FOR OTHER RELIEF

Plaintiffs, Aziz Fetinci; Armada Trucking Services, LLC; Muhamed Fetic;

Express Line Logistics, Inc.; and Kenan Hujdur, on behalf of themselves and all

others similarly situated, including participating prospective class member Nihad

4901-2883-3548, v. 2

Mustafic, by and through their attorneys, Hertz Schram PC, hereby submit this motion for default judgment and for other relief as stated below. Plaintiffs and Defendants have spent significant time negotiating a potential resolution over the past weeks, but Plaintiffs submit this motion and the requested relief in order to ensure that the matter continues toward resolution. Plaintiffs submit this motion with simultaneous motions seeking resolution in coordination with this motion.

Respectfully Submitted,

HERTZ SCHRAM PC

*/s/ Daniel W. Rucker*
By:  Steve J. Weiss (P32174)
        Daniel W. Rucker (P67832)
Attorneys for Plaintiff
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000

Date: January 6, 2025

4901-2883-3548, v. 2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AZIZ FETINCI, ARMADA TRUCKING
SERVICES, LLC, MUHAMED FETIC,
EXPRESS LINE LOGISTICS, INC.,                 Case No. 2:23-cv-11720
and KENAN HUJDUR,                             Hon. Robert J. White
                                              Mag. Kimberly G. Altman

          Plaintiffs,

v

RAYCO LOGISTICS, LLC, a Michigan
company, BRAVO LOGISTICS, LLC, a
Michigan company, and RAY LAAMARI,

          Defendants.

---

HERTZ SCHRAM PC                       Ray Laamari, in pro per
By:   Steve J. Weiss (P32174)        35765 Groesbeck Hwy.
      Daniel W. Rucker (P67832)    Clinton Twp, MI 48035
*Attorneys for Plaintiffs*                    (586) 610-1123
1760 S. Telegraph Road, Suite 300     ray@raycologisticsllc.com
Bloomfield Hills, MI  48302
(248) 335-5000
sweiss@hertzschram.com
drucker@hertzschram.com

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## <u>FOR DEFAULT JUDGMENT AND FOR OTHER RELIEF</u>

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES PRESENTED ........................................... v

STATEMENT OF CONTROLLING ................................................... vi

INTRODUCTION ............................................................................. 1

PROCEDURAL STATEMENT ........................................................... 1

FACTUAL STATEMENT ................................................................. 4

    The Complaint ........................................................................4

    Other Evidence .......................................................................6

    Damages Estimation .............................................................14

ARGUMENT ..................................................................................16

    I.    Default Judgment Should be Entered ...............................16

        A.   Rule 55 Default and Default Judgment .......................16

        B.   Default for Violation of Discovery Rules and Subpoenas ...........19

        C.   Default for Violation of Court Orders and Rules.......................22

    II.   Relief Requested ...............................................................24

4901-2883-3548, v. 2

# INDEX OF AUTHORITIES

## Cases

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995) ..............................17, 23

*Bischoff v. Waldorf*, 660 F. Supp. 2d 815 (E.D. Mich. 2009) ................................23

*CFTC v. Marquis Fin. Mgmt. Sys., Inc.*, No. 03-74206, 2005 U.S. Dist. LEXIS 41440, 2005 WL 3752233, at *2 (E.D. Mich. June 8, 2005)..............................19

*Doherty v. American Motors Corp.*, 728 F.2d 334 (6th Cir. 1984) .......................23

*Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976)....................................................19

*Ferrer v. Detroit Club Mgmt. Corp.*, No. 22-cv-11427, 2024 U.S. Dist. LEXIS 198337, *14 (E.D. Mich. Oct. 31, 2024) ..................................................vi, 19, 20

*Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S. Ct. 2287, 20 L. Ed. 2d 1387 (1968) ...... 17, 20, 21, 23

*Flynn v Angelucci Bros. & Sons, Inc.*, 448 F.Supp.2d 193 (D.D.C. 2006).............17

*Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006)........................17

*Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515 (E.D. Mich. 2023) ................................................................................................ vii

*Ginger v. Cohn*, 426 F.2d 1385 (6th Cir. 1970)....................................................23

*Golden v. Am. Pro Energy*, No. EDCV 16-891-MWF, 2018 U.S. Dist. LEXIS 237279, *5-6 (C.D. Cali. Feb. 15, 2018) ........................................................vi, 21

*Gutierrez v. Uni Trans, L.L.C.*, No. 21-73 KWR/SCY, 2022 U.S. Dist. LEXIS 230345, *3-4 (DNM Dec. 22, 2022)....................................................................21

*Harmon v. CSX Transp.*, 110 F.3d 364 (6th Cir. 1997) ........................................21

*Hawkins v. Richter*, No. 17-1968, 2018 U.S. App. LEXIS 18541, 2018 WL 4042465, at *2 (6th Cir. July 6, 2018) ..........................................................vi, 23

*James v. Frame*, 6 F.3d 307 (5th Cir. 1993)........................................................18

*Jefferson v. United Car Co., Inc.*, No. 14-cv-13749, 2015 U.S. Dist. LEXIS 75393, *5-6 (E.D. Mich. June 11, 2015) .........................................................................18

*Jones v. Portfolio Recovery Assocs., LLC*, No. 2:16-14061-cv, 2017 U.S. Dist. LEXIS 184093, *2 (ED Mich Nov. 7, 2017) ....................................vi, 17, 20, 21

*KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 934 (6th Cir. 2020) ...........................................................................................................20

*Liberis v. Craig*, 845 F.2d 326; 1988 U.S. App. LEXIS 5455, *15-16 (6th Cir. 1988) ................................................................................................ vii, 22

*Lincoln v. Comm'r of Soc. Sec.*, 62 F. App'x 93 (6th Cir. 2003) ......................vi, 17

*Mager v. Wis. Central Ltd.*, 924 F.3d 831 (6th Cir. 2019)....................................20

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011) ...........................18

*New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403

4901-2883-3548, v. 2

(6th Cir. 2022) ..................................................................................23

*Ningbo S-Chande Imp. & Exp. Co., Ltd. v. Allied Tech., Inc.*, No. 20-10190, 2024
   U.S. Dist. LEXIS 177466, *6-7 (E.D. Mich. Sept. 30, 2024) ......................20, 23

*Ortiz-Gonzalez v. Fonovisa*, 277 F3d 59 (1st Cir. 2002) .........................................17

*Pope v. United States*, 323 U.S. 1, 12; 89 L. Ed. 3; 65 S. Ct. 16 (1944) ...............18

*Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2018 U.S. Dist. LEXIS
   139060, *18 (E.D. Mich. Aug. 16, 2018) ............................................................18

*Schafer v. City of Defiance Police Dep't*, 529 F.3d 731 (6th Cir. 2008) ...............20

*SEC v. Romer*, No. 18-cv- 12927, 2019 WL 3219906, at *2
   (E.D. Mich. July 17, 2019)..................................................................................19

*Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007) .....................................................17

*United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) ............................19

*United States v. 9.19 Acres of Land*, 416 F.2d 1244 (6th Cir. 1969).....................23

*United States v. Conces*, 507 F.3d 1028 (6th Cir. 2007)........................................17

*United States v. Reyes*, 307 F.3d 451 (6th Cir. 2002) ............................................20

*Vesligaj v. Peterson*, 331 F. App'x 351 (6th Cir. 2009) ........................................18

*Wahl v McIver*, 773 F.2d 1169 (11th Cir. 1985)........................................17, 20, 21

*Wang v. GM, LLC*, No. 18-10347; 2021 U.S. Dist. LEXIS 99166, *6-8
   (E.D. Mich. May 26, 2021) ................................................................................ vii

## Statutes

28 U.S.C. § 1654..........................................................................................................23

49 U.S.C. § 14704(e) ...................................................................................................24

## Other Authorities

Wright & Miller, 10A Federal Practice & Procedure, § 2685, 2688 (3d ed. 1998) 18

## Rules

Fed. R. Civ. P. 37(b)(2)(A) ..................................................................................vi, 19

Fed. R. Civ. P. 45 ........................................................................................................ vi

Fed. R. Civ. P. 45(g) ...................................................................................................21

Fed. R. Civ. P. 55(b)(2)..........................................................................................vi, 17

## Regulations

49 CFR 376.12(g) ........................................................................................................ 9

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.      Whether Plaintiffs are entitled to default judgment.

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

Federal Rule of Civil Procedure 55(b)(2) allows the court to enter a default judgment against a defendant who has failed to plead or "otherwise defend" against an action. Fed. R. Civ. P. 55(b)(2).

The decision to grant default judgment is within the discretion of the district court. *See Lincoln v. Comm'r of Soc. Sec.*, 62 F. App'x 93, 94 (6th Cir. 2003).

A district court has the authority to enter default judgments for failure...[to] comply with rules of procedure." *Jones v. Portfolio Recovery Assocs., LLC*, No. 2:16-14061-cv, 2017 U.S. Dist. LEXIS 184093, *2 (ED Mich Nov. 7, 2017).

Default is also appropriate because it is well-settled that corporations must be represented by an attorney in federal court. *Hawkins v. Richter*, No. 17-1968, 2018 U.S. App. LEXIS 18541, 2018 WL 4042465, at *2 (6th Cir. July 6, 2018).

Default is also appropriate because Rule 37 provides for the imposition of sanctions for failing "to obey a court order to produce or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *Ferrer v. Detroit Club Mgmt. Corp.*, No. 22-cv-11427, 2024 U.S. Dist. LEXIS 198337, *14 (E.D. Mich. Oct. 31, 2024).

A party may rely upon noncompliance with a Fed. R. Civ. P. 45 subpoena to support a motion for default judgment. *Golden v. Am. Pro Energy*, No. EDCV 16-891-MWF, 2018 U.S. Dist. LEXIS 237279, *5-6 (C.D. Cali. Feb. 15, 2018).

4901-2883-3548, v. 2

A court has "inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees," particularly for "wilfull [sic] disobedience of a court order." *Liberis v. Craig*, 845 F.2d 326; 1988 U.S. App. LEXIS 5455, *15-16 (6th Cir. 1988).

*Wang v. GM, LLC*, No. 18-10347; 2021 U.S. Dist. LEXIS 99166, *6-8 (E.D. Mich. May 26, 2021) (collecting cases re alter egos of sister corporations).

*Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515, 528 (E.D. Mich. 2023) (indicating that corporate leaders or owners are held liable when the companies are used as a "mere instrumentality").

vii

## INTRODUCTION

The present matter involves a trucking company that leases independent contractors' trucking equipment and services to haul loads for customers. Damages in this case arise in part from the fact that Defendants entered into a standard lease agreement with owner-operators, such as Plaintiffs and the proposed class, that required that Defendants pay Plaintiffs a specific percentage of the amounts received from customers for each freight haul. However, Defendants then misrepresented to the drivers the amounts received from customers; thereby violating the agreement, statute, and regulations. Other violations exist, including misuse of escrow funds. Defendants have failed to participate in the litigation process and have violated various scheduling requirements and deadlines as well as court orders.

## PROCEDURAL STATEMENT

Plaintiffs filed their Class Action Complaint on July 18, 2023. (ECF 1.) Defendants sought an extension to answer the Complaint until October 6, 2023, and again until November 6, 2023, with the intent of early resolution. (ECF 11.) On November 6, 2023, Defendants filed a motion to dismiss. (ECF 12.) The Court held arguments several months later and ruled on the issue on April 25, 2024, denying the motion to dismiss but declining supplemental jurisdiction. (ECF 24.)

Defendants filed an answer on June 6, 2024. (ECF 28.) Plaintiffs served a Preservation Notice on June 14, 2024. (**Ex. 3**, Preservation Notice dtd 2024-6-14.)

1

The parties submitted a Joint Rule 26(f) Plan on July 15, 2024, identifying Nihad Mustafic as part of the litigation and requiring initial disclosures on or before July 19, 2024. (ECF 30, P.ID400.) Plaintiffs timely served their initial disclosures on July 19. (**Ex. 4**, Pls Initial Disclosures Proof of Service.) On July 30, 2024, Plaintiffs served their First Set of Document Requests to Defendants. (ECF 35-2, Pls First Set of Document Requests to Defendants, and POS.)

Defendants' counsel moved to withdraw on August 5, 2024. (ECF 33.) Plaintiffs filed a response on August 19, 2024, and requested that Defendants be compelled to serve initial disclosures and responses to document requests served on July 30, 2024. (ECF 35, P.ID430; ECF 35-1, Initial Disclosure POS; ECF 35-2, Pls First Set of Document Requests to Defendants, and POS.) On September 19, 2024, Plaintiffs served each Defendant with subpoenas for depositions and production of documents, and attached Plaintiffs' first document requests previously. (**Ex. 2**, Subpoenas to Rayco, Bravo, Laamari, Document Requests, and POS.)

On October 9, 2024, the Court granted defense counsel's motion to withdraw and ordered that Defendants obtain new counsel by November 8, 2024; provide initial disclosures by November 22, 2024; answer discovery requests by November 22, 2024; and (4) submit to depositions and provide documents by November 22, 2024, pursuant to the subpoenas deuces tecum. (Order re Withdrawal, ECF 42, P.ID454.) On November 25, 2024, Ray Laamari appeared on behalf of all

2

Defendants for a deposition, but he arrived nearly two hours late, and he refused to answer a variety of questions or to produce documents.

The Court held a status conference on November 26, 2024, in which Plaintiffs' counsel alerted the Court that Defendants failed to comply with the October 9 order and had failed to maintain effective contact information. Defendants (1) did not obtain new counsel; (2) did not produce initial disclosures; (3) did not answer document requests; and (4) did not comply with the subpoenas production and refused to submit to various deposition questions. On November 27, 2024, the Court entered an order requiring Defendants to Comply with Local Rule 11.2 and Show Cause Why They Should Not Be Sanctioned. (ECF 44.) The Court's November 27 order required that by December 11, Defendants must update their contact information, demonstrate they have retained new counsel or will appear *pro se*, and show cause why they should not be subject to sanctions for lack of counsel and change of address information. (ECF 44, P.ID457-458.) On December 3, 2024, Plaintiffs requested that the Clerk Enter Default in light of Defendants' violation of the Court's October 9, 2024, order and failure to retain counsel, to serve initial disclosures, to provide discovery responses, and to comply with subpoenas. (ECF 46.) Plaintiff's request for Entry of Default relied upon the Court's acknowledgement of Defendants' admitted noncompliance with the Court's prior order. (ECF 46.) The Clerk Entered Default on December 12, 2024. (ECF 47.)

4901-2883-3548, v. 2

## FACTUAL STATEMENT

### The Complaint

The Complaint seeks relief for the named Plaintiffs as well as prospective class members, which includes Nihad Mustafic. (ECF 1 ¶ 19.)  Defendants engaged in unfair and oppressive behavior regarding the truck lease agreements by improperly withholding compensation and escrow funds and by misleading Plaintiffs regarding the revenue actually derived from the freight hauls. (ECF 1 ¶ 35.) Laamari signed leases on behalf of Rayco and Bravo, which companies acted interchangeably and were both controlled by Laamari relative to the leases and drivers. (ECF 1 ¶ 38.) Defendants failed to comply with a variety of requirements within the Leasing Regulations, including "clearly" stating the amount to be paid drivers, which provision Defendants violated by affirmatively concealing or omitting the actual value of the freight shipments. (ECF 1 ¶¶ 43-48, 50-53.) The Lease Regulations require that the carrier-lessee provide the driver-lessor with information actually showing the rate charged for the freight, but Defendants affirmatively misled the drivers and hid this information. (ECF 1 ¶ 45.) Plaintiffs obtained a limited number of documents establishing Defendants' pattern and practice of substantially underreporting the freight charges, and the documents show the drivers were ***paid less than 50% of what they were due*** for various freight hauls. (ECF 1 ¶ 51.) Defendants failed to provide an accounting or notice of the right to an

4

accounting, failed to identify the uses of the escrow fund and to provide interest or timely return of escrow funds, among other things. (ECF 1 ¶¶ 48-49.)

Count I of the Complaint addresses Defendants' failure to specify and adhere to the amount to be paid for the driver's services and equipment. (ECF 1 ¶¶ 58-70.) Plaintiffs allege concealment and omissions as well as irreparable harm, among other things. (ECF 1 ¶¶ 66, 68-70.) Count II addresses Defendants' failure to accurately document and disclose the revenue generated by a shipment where the driver's revenue is based upon a percentage of the gross revenue for the shipment. (ECF 1 ¶¶ 71-83.) Count III addresses Defendants' failure to support the validity of charge-back items. (ECF 1 ¶¶ 84-96.)

Count IV addresses Defendants' failure to specify and support charge-back requirements for and costs of insurance. (ECF 1 ¶¶ 97-109.) Count IV (number repeated in error) addresses Defendants' violation of regulatory requirements, including specifying permissible uses of escrow funds, providing an accounting, paying escrow interest timely, and providing notice of required conditions for return of escrow funds. (ECF 1 ¶¶ 110-122.) Count VII addresses fraudulent concealment extending the limitations period. (ECF 1 ¶¶ 142-156.) With respect to each Count addressed *supra*, Plaintiffs allege concealment and omissions as well as irreparable harm, among other things. (ECF 1 ¶¶ 74-77, 79, 81, 83; 87-90, 92, 94, 96; 101-103, 105, 107, 109; 114, 116, 118, 120, 122; 144-149, 151-152, 154-156.)

4901-2883-3548, v. 2

The Complaint requests equitable relief, including restitution (ECF 1 at Request for Relief (d)); an accounting (ECF 1 ¶¶ 3, 48(b)-(c), 112(b)-(c) ¶¶ 3, 48(b)-(c), 112(b)-(c); declaratory relief (ECF  1 ¶¶ 3, 21(e), 24); injunctive relief (ECF 1 ¶¶ 3, 21(e), 24, 68, 81, 94, 107, 120, 152, and Request for Relief (b)-(c)); disgorgement (ECF 1 at Request for Relief (d)); and class certification (ECF 1 at Request for Relief (a)). The Complaint also seeks money damages and other legal relief, including costs, restitution, punitive damages, pre- and post-judgment, and attorneys' fees. (ECF 1 ¶¶ 56, 68-70, 81-83, 94-96, 107-109, 120-122, 152-153, 156, and Request for Relief (d)-(f)). The Complaint seeks any other appropriate relief, including any statutory and common law remedies addressed in the Complaint, which would include relief for fraud. (ECF 1 at Request for Relief (g)).

**Other Evidence**

Ray Laamari, *aka* Rahim Laamari, *aka* Abderrahim Laamari, is the sole owner-member of Rayco, which is now inactive, and Miranda Laamari, *aka* Miranda Stough, is the sole owner-member of Bravo, which is also now inactive. (**Ex. 1**, Laamari Dep. at 6, 15-16, 144; **Ex. 8**, U.S. DOT Company Snapshots.) Ray stated that Rayco and Bravo do not have current authorization from Michigan and the Department of Transportation (DOT) to haul freight, and that images of drivers in the Rayco-Bravo trucks are just people "sitting" in the trucks and not hauling freight. (**Ex. 1** at 134-35.) Ray is the most knowledgeable about the operations of both Rayco

6

and Bravo and states that he operated Bravo for Miranda. (**Ex. 1** at 7, 16-17.) However, during the course of settlement negotiations in this matter, Miranda produced Bravo documents showing that she is addressing multiple sets of Bravo litigation and property matters, and she participated in settlement negotiations by vetoing a possible agreement between the parties. (**Ex. 9**, M. Stough Bravo Email and attachments.) Ray testified that his duties for both Rayco and Bravo included addressing financial issues. (**Ex. 1** at 18-19.) Ray testified that Defendants did not pay a vendor for their online access, so they were not checking emails or mail for information regarding court activities. (**Ex. 1** at 8, 66.) The Defendants' professional address is 35765 Groesbeck Hwy, Clinton Twp, but the doors have been locked for a few months and no business has been transacted. (**Ex. 1** at 11-12.)

Ray provided the process by which Defendants mislead and undercompensated the drivers. Ray states that he would negotiate pricing with brokers, who represent customers with goods to ship, in order to secure freight for the drivers to haul. (**Ex. 1** at 20-21, 24.) Ray states "it's not a negotiation" when he discussed the freight haul rates with the drivers. (**Ex. 1** at 21-22.) Ray testified that after a driver suggested an amount necessary for a certain freight haul, Ray would go back and negotiate with the customer's broker. (**Ex. 1** at 28-30.) Ray states that the process was "like in [the] street like a hustle." (**Ex. 1** at 29.) Ray testified repeatedly that he did not inform the drivers of the freight haul rates actually

negotiated with brokers and paid by the customers. (**Ex. 1** at 22, 29-30.) Ray testified that Rayco and Bravo are "run the same way" and that "the same guy" runs both entities, and that "guy" is "Me, Rahim Laamari." (**Ex. 1** at 63-64.) In short, Ray admitted that the only negotiations regarding the freight rate were performed with the customers' brokers and not with the drivers.

Ray reviewed the Independent Contractor Agreement (ICA) attached to the Complaint and confirmed it was used with all of the independent drivers. (**Ex. 1** at 69, 71-72; ECF 1-1, PgID45.) Ray confirmed that the ICA requires drivers to be paid 75% of a "*negotiable flat rate*" and the other 25% goes to Bravo. (**Ex. 1** at 72-73; ECF 1-1, PgID46.) Ray testified that "*it's not a negotiation*" when he discussed the freight haul rates with the drivers. (**Ex. 1** at 21-22.) Ray testified repeatedly that it was "not the drivers' business" what rates he negotiated with the customers. (**Ex. 1** at 74.) When asked how the driver would know what the full negotiable rate is, Ray testified "that's not their concern." (**Ex. 1** at 77.) Ray confirmed the ICA and its exhibits do not establish there would be *two* "negotiable flat rates," one with the driver and another with the customer, and he contended the driver was not supposed to know the rate negotiated with the customer. (**Ex. 1** at 81, 83, 86, 88, 92.) Ray confirmed that "it does not exist," when asked about any provision in the ICA alerting drivers to two negotiable flat rates, one with the driver and one with the customer. (**Ex. 1** at 96.) Ray confirms that the only negotiated rate is with the

customer, and "we go and fight for that rate," but Ray contends that rate should be kept hidden from the driver because "it's not their business" even though the driver is supposed to receive 75% of the negotiated rate. (**Ex. 1** at 100, 104-05.) Thus, Ray admitted Defendants concealed the negotiated rate from drivers.

Ray explained that the information contained in the customer's freight bill includes the rate charged to the customer. (**Ex. 1** at 105.) Ray testified that he is surprised that 49 CFR 376.12(g) requires the carrier to allow the driver to see the freight bill and rates charged to the customer when the driver's compensation is based upon a percentage of the gross freight rate. (**Ex. 1** at 105-06.) Ray agreed that the regulations in 49 CFR 376.12(g) did require Defendants to show the drivers the rate that was charged to the customers. (**Ex. 1** at 107.) Ray then suggested that there must have been a waiver of that provision, but he could not find such a waiver in the ICA, so he said he would look for one "in my office," but he has produced no waivers as to any driver. (**Ex. 1** at 107.) Thus, Ray admitted that Defendants violated the Truth in Leasing regulations by hiding from drivers the rates charged to customers.

Ray claimed various Bravo compensation documents were "illegal" and refused to answer deposition questions. (**Ex. 1** at 30-31.) The Defendants failed to produce any documents in response to discovery requests or the subpoenas, which attached the discovery requests. (**Ex. 1** at 55-56; **Ex. 2**, Subpoenas and Discovery Requests.) Ray testified he and Defendants refused to produce documents on behalf

of Bravo in response to discovery requests or the subpoena because there was an accumulated charge of $1,017.50 to access Bravo documents through a vendor site. (**Ex. 1** at 56-59, 64-65, 132.) With respect to Rayco, Ray testified "I said I don't want to talk about Rayco" and refused to address what documents Rayco possessed in response to the discovery requests and subpoenas. (**Ex. 1** at 60, 62-63, 64-65.)

Ray reviewed deposition exhibits showing compensation paid to drivers for routes in particular pay periods, and Ray confirmed that the rates in the middle of the page were the freight rates shown to drivers. (**Ex. 1** at 112; **Sub-Ex. 4.2.1**.) Ray reviewed exhibits with the freight rates shown to drivers ($500) and comparable documents with larger freight rates actually paid by the customer ($7,299.92) typed to the side in red. (**Ex. 1** at 113; **Sub-Ex. 4.2 & 4.2.1**.) Ray explained that the larger rate was the one paid by the customer and the smaller was the rate upon which the driver's 75% compensation was based, and Ray explained that the $500 to $7,299.92 disparity in that instance was because the notes in red state the driver only handled a portion of the route. (**Ex. 1** at 113-114, 116; **Sub-Ex. 4.2 & 4.2.1**.)

After Ray confirmed the red typed rates showed what was charged to the customer, and the grey typed rates were what was shown to drivers, he began refusing to further discuss the documents showing Defendants' fraudulent conduct and claimed that the documents were "illegal" because he did not know how Plaintiffs received them, demanded that Plaintiffs subpoena him, and then confirmed

that he had *already* been subpoenaed. (**Ex. 1** at 114-115, 120.) However, Ray confirmed that the larger freight rates typed in red were what was actually negotiated and charged to the customers, and the lower, grey-typed rates were what was reported to the drivers. (**Ex. 1** at 117, 119; **Sub-Ex. 4.2 & 4.2.1**.) Ray confirmed that deposition Exhibit 2.3 shows $3,200 as the freight rate reported to the driver, while the number in red, $4,500, is the actual freight rate charged to the customer. (**Ex. 1** at 132-33; **Sub-Ex. 2.3**.) Ray confirmed that it was the same for all of the other documents – the red number shows the actual freight rate, and the standard grey type is the lower rate reported to the drivers. (**Ex. 1** at 133-34; **Sub-Ex. 2.3**.)

Ray testified that Rayco currently has one truck, no trailers, no land, no facilities, and bank accounts at Citizens Bank that have a low balance or are essentially empty or in the negative. (**Ex. 1** at 33, 38, 39-42.) Ray testified that Bravo currently has more than 20 trucks, 11 trailers, no land, no facilities, and bank accounts at Citizens Bank that are essentially empty or in the negative. (**Ex. 1** at 34-35, 39-42.) Ray provided the following Citizens Bank account numbers and values:

| | |
|---|---|
| Bravo Account -1096: | $0.06 balance |
| Bravo Account -1118: | ($3,733.82) balance |
| Bravo Account -1126: | ($1,093.55) balance |
| Bravo Savings Account -5480 | $0 balance |
| Rayco Account -5990: | $139.40 balance |
| Rayco Account -6008: | $0.01 balance |
| Rayco Account -6016: | $3,122.61 balance |
| NYZ Account -4018: | $0 balance |
| NYZ Account -4026: | $0 balance |
| NYZ Account -4190: | $0 balance |

11

|                        |                   |
|------------------------|-------------------|
| NYZ Account -1626:     | $0 balance        |
| Personal Checking:     | $0 balance        |
| Personal Checking -6933: | $620.03 balance |

(**Ex. 1** at 39-42.) Ray contends that there is a very old Comerica Bank account with only $50 to $100 dollars in it. (**Ex. 1** at 42.)

Ray admits Rayco paid drivers and submitted 1099s to them, including each of the four Plaintiffs, for work performed on behalf of Bravo. (**Ex. 1** at 47, 49-52; **Sub-Ex. 2.1.1**; **Sub-Ex. 2.1.2**; **Sub-Ex. 3.4**; **Sub-Ex. 4.1**; **Sub-Ex. 5.1**.) Ray testified that Bravo generated revenue that was transferred to Rayco to make payments to drivers, and he testified that the bank accounts are connected and "***we transfer the money between these accounts as we please***." (**Ex. 1** at 51-54.)

Ray testified that the commercial real estate at 35765 Groesbeck Highway, Clinton Twp, where Rayco and Bravo do business is being purchased on a land contract in the names of Ray and Miranda. (**Ex. 1** at 35-36.) Ray states the land is approximately 13 acres and includes offices and a shop and is worth approximately $1.25 million. (**Ex. 1** at 35-36.) However, the property is on the market for $2.895 million, and Ray said he received an offer for $1.5 million. (**Ex. 1** at 129, 139-140; **Sub-Ex. 6.8**; **Ex. 6**, Real Estate Listing.) Ray contends there are liens and land contract sellers on the property, but he testified that he did not know the names of the land contract sellers to whom he pays $18,000 monthly and is overdue by four to five months of payments. (**Ex. 1** at 130-31.) Ray testified there is over $150,000

in unpaid property taxes as well as unpaid business and personal taxes. (**Ex. 1** at 129, 131.) Ray testified he and Miranda own no other commercial facilities or properties other than a personal residence. (**Ex. 1** at 36-37.) Ray testified that Defendants sold a Rayco-Bravo shop building for approximately $700,000 to Nino Salvaggio in September 2023, which was 2 months after this case was initiated. (**Ex. 1** at 135-36.) Ray also testified that he and Miranda have a $650,000 line of equity that they put on their residence at 37251 Fiore Trail, but he claims that all of the bank accounts are nonetheless empty. (**Ex. 1** at 142.) Ray testified that he believes he is in default on all of the loans for the trailers and trucks Defendants own. (**Ex. 1** at 131.)

Ray Laamari changed his name to "Rahim" Laamari a couple months ago. (**Ex. 1** at 9.) Ray and Miranda are divorcing. (**Ex. 1** at 11, 143-44.) Ray is starting a new business called NYZ Transportation, which does the same thing as Rayco and Bravo but with different customers, and Ray intends to purchase NYZ using assets of Rayco or Bravo. (**Ex. 1** at 11, 14-15; **Ex. 7**, NYZ Transportation LARA docs.) Ray is purchasing NYZ from a longtime friend whose name he could not remember but then suggested it might be Raafat Shumari. (**Ex. 1** at 11-12.) Ray altered his testimony and stated the NYZ business was "technically" his already, but he would purchase the business using one of the Rayco/Bravo trucks. (**Ex. 1** at 43-45.) Ray has tried to sell company assets to pay personal debts. (**Ex. 1** at 46.)  Ray is from Morocco, where he owns a home in Casablanca. (**Ex. 1** at 12, 151-52.) The Laamaris

13

own four vehicles with no loans: 2011 Buick Enclave; 2012 GMC Sierra Denali; 2015 Cadillac Escalade; 2023 GMC Yukon Denali (**Ex. 1** at 152); together valued at approximately $120,000 by Kelly Bluebook.

Publicly accessible documents show that Miranda, like Ray, has recently started new companies. Miranda started a new trucking company on May 3, 2024, called Elite Freight Solutions, LLC, and she started another business on May 23, 2024, called Miranda Maids, LLC. (**Ex. 10**, LARA Records of Miranda Stough Businesses.) Ray and Miranda removed $650,000 in equity from their home through a mortgage dated April 22, 2023, that Ray signed as "Abderrahim Laamari." (**Ex. 11**, Laamari-Stough Line of Credit.) In light of the sale of a $700,000 shop in late 2023, the withdrawal of $650,000 from their home equity in 2023, Ray's use of three names recently, Miranda's use of two names recently, Ray's establishment of a new trucking company in 2024, Miranda's establishment of a new trucking company and another business in 2024, Ray and Miranda allowing Defendant trucking companies to become inactive while emptying their bank accounts, and Ray's testimony that Ray and Miranda interchange assets and funds between companies as they please, there is significant evidence that Ray and Miranda are dissipating assets in order to generate new businesses and avoid the damages owed to Plaintiffs.

### Damages Estimation

The value of the participating Plaintiffs' claims can be estimated by taking the

14

total amount paid as shown on the drivers' Form 1099, then dividing that number by the reduced percentage paid by Defendants and then reducing that result by the amount on the Form 1099. The equation is as follows:

**[(1099 income amount) / Reduced % paid ] - (1099 income amount) = loss.**

Each of the Plaintiffs' income amount is shown in 1099s attached as exhibits. (**Ex. 1**, **Sub-Ex. 2.1.1**; **Sub-Ex. 2.1.2**; **Sub-Ex. 3.4**; **Sub-Ex. 4.1**; **Sub-Ex. 5.1**.)

Plaintiffs questioned Laamari at deposition about a few of the compensation documents showing a smaller number reported to the drivers and a larger number typed in red that was actually the rate charged to the customers. (**Ex. 1** at 112-14, 116-17, 119, 132-34; **Sub-Ex. 2.3, 4.2, & 4.2.1**.) The Complaint references 25 examples that Plaintiffs possessed showing the lower freight rate presented to drivers along with the actual higher freight rate typed in red. (ECF 1 ¶ 51.) The examples identified in the Complaint show that Defendants underreported the rates to drivers by as much as 53% (ECF 1 ¶ 51(o)) and on average underreported by 30% (ECF 1 ¶ 51(a)-(y)).

Below are the estimated losses for Plaintiffs based on their 1099s income, the maximum reduction of the freight rate by 53% (meaning the drivers received 47%), and the equation noted. The

**Equation:** (1099 amt / 47%) – (1099 amt) = x
A. Fetinci - 1099 of $158,215 yields $178,413 potential loss
K. Hujdur - 1099 of $123,945 yields $139,768 potential loss
M. Fetic - 1099 of $201,078 yields $226,748 potential loss

15

N. Mustafic - 1099 of $18,128 yields $20,442 potential loss
**Total Losses** = $565,371

Below are the estimated losses for Plaintiffs based on the average reduction of the

freight rate by 30% (meaning the drivers received 70%).

**Equation:** (1099 amt / 70%) – (1099 amt) = x
A. Fetinci - 1099 of $158,215 yields $67,806 potential loss
K. Hujdur - 1099 of $123,945 yields $53,119 potential loss
M. Fetic - 1099 of $201,078 yields $86,176 potential loss
N. Mustafic - 1099 of $18,128 yields $7,769 potential loss
**Total Losses** = $214,870

The limited documents in Plaintiffs' possession establish that *four drivers* lost

between an estimated $214,870 and $565,371.

## **ARGUMENT**

## I.    **Default Judgment Should be Entered.**

Default judgment should be entered against each of the Defendants for failing

to defend, violating discovery rules and subpoenas, and violating orders and rules.

### **A. Rule 55 Default and Default Judgment.**

Pursuant to Federal Rule of Civil Procedure 55, Plaintiffs filed a request for

entry of default on December 3, 2024, as to all Defendants and noted that while each

Defendant answered the Complaint, entry of default is appropriate for failure to

"otherwise defend." (ECF 46.) Rule 55(b)(2) allows the Court to enter a default

judgment against a defendant who has failed to defend an action and states,

The court may **conduct hearings** or make referrals - preserving any federal
statutory right to a jury trial - when, to enter or effectuate judgment, it needs

16

to:
    (A) **conduct an accounting**;
    (B) **determine the amount of damages**;
    (C) establish the trust of any allegation by evidence; or
    (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2) (emphasis added).

Granting default judgment is within the court's discretion. *See Lincoln v. Comm'r of Soc. Sec.*, 62 F. App'x 93, 94 (6th Cir. 2003). A "district court has the authority to enter default judgments for failure...[to] comply with rules of procedure." *Jones v. Portfolio Recovery Assocs., LLC*, No. 2:16-14061-cv, 2017 U.S. Dist. LEXIS 184093, *2 (ED Mich Nov. 7, 2017 (quoting *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).[1] Default judgments "certainly are appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id*. at *2 (quoting *Flynn v Angelucci Bros. & Sons, Inc.*, 448 F.Supp.2d 193, 195 (D.D.C. 2006) (quotation omitted)). "A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Id*. at *3 (quoting *Ortiz-Gonzalez v. Fonovisa*, 277 F3d 59, 62-63 (1st Cir. 2002)).[2]

---

[1] *See also Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 887 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S. Ct. 2287, 20 L. Ed. 2d 1387 (1968) (courts may enter default judgment for failure to comply with orders or procedural rules).

[2] *See also United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007); *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006).

17

After a default judgment, a court may provide a hearing when necessary to establish the amount of damages the plaintiff is entitled to in the judgment. *Ortiz-Gonzalez*, 277 F3d 59, 64 (quoting *Pope v. United States*, 323 U.S. 1, 12; 89 L. Ed. 3; 65 S. Ct. 16 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.")). A court determines the "amount and character of the recovery awarded." *Jefferson v. United Car Co., Inc.*, No. 14-cv-13749, 2015 U.S. Dist. LEXIS 75393, *5-6 (E.D. Mich. June 11, 2015) (citing Wright & Miller, 10A Federal Practice & Procedure, § 2685, 2688 (3d ed. 1998) (collecting cases)). A hearing regarding damages after default judgment is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2018 U.S. Dist. LEXIS 139060, *18 (E.D. Mich. Aug. 16, 2018), *aff'd sub nom. Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759 (6th Cir. 2019) (*quoting Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011)).[3] To determine the amount of damages, a district

---

[3] *See also James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (After a default judgment, "unliquidated damages normally are not awarded without an evidentiary hearing" except "where the amount claimed is a liquidated sum or one capable of mathematical calculation."); *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009) (Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing" to determine damages).

18

court may rely on documentary evidence, affidavits, or declarations submitted by the moving party in lieu of conducting a hearing. *See, e.g., SEC v. Romer*, No. 18-cv- 12927, 2019 WL 3219906, at *2 (E.D. Mich. July 17, 2019).[4]

In this case, Defendants have, among other things, ignored the scheduling order, failed to serve initial disclosures, failed to answer discovery, failed to comply with subpoenaed document requests, refused to answer deposition questions, violated multiple Court orders (dated October 9, 2024, and November 27, 2024), failed to obtain counsel, did not show cause when required, and violated local rules regarding updating contact information. (*See* Procedural Statement, *supra*.)

**B. Default for Violation of Discovery Rules and Subpoenas**.

Default is also appropriate because Rule 37 provides for the imposition of sanctions for failing "to obey a court order to produce or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *Ferrer v. Detroit Club Mgmt. Corp.*, No. 22-cv-11427, 2024 U.S. Dist. LEXIS 198337, *14 (E.D. Mich. Oct. 31, 2024). Some of the permissible sanctions are listed in Rule 37, including "prohibiting the disobedient party from supporting or opposing designated claims"; "rendering a default judgment against the disobedient party"; and "treating as contempt of court the failure to obey" an

---

[4] *See also CFTC v. Marquis Fin. Mgmt. Sys., Inc.*, No. 03-74206, 2005 U.S. Dist. LEXIS 41440, 2005 WL 3752233, at *2 (E.D. Mich. June 8, 2005) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976)).

order (except for physical or mental examination). *Id*.[5]

In deciding whether a case-ending sanction such as default is an appropriate

sanction under Rule 37, courts consider four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [defaulted] party's conduct; (3) whether the [defaulted] party was warned that failure to cooperate could lead to [default]; and (4) whether less drastic sanctions were imposed or considered before [default] was ordered.

*Ferrer*, 2024 U.S. Dist. LEXIS 198337 at *15-16 (citing *Mager v. Wis. Central Ltd.*,

924 F.3d 831, 837 (6th Cir. 2019) (quoting *United States v. Reyes*, 307 F.3d 451,

458 (6th Cir. 2002)) (alterations in brackets)).[6] A default is appropriate where there

is delay or "contumacious conduct," including "behavior that is perverse in resisting

authority and stubbornly disobedient." *Id*. at *16 (citing *Mager*, 924 F.3d at 837).  A

party is "prejudiced" by the other party's conduct where the other party "waste[d]

time, money, and effort in pursuit of cooperation which [the recalcitrant party] was

legally obligated to provide." *Ningbo S-Chande*, 2024 U.S. Dist. LEXIS 177466, *4,

6-8 (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir.

2008) (alterations in original) (quoting *Harmon v. CSX Transp.*, 110 F.3d 364, 368

---

[5] *See also Jones*, 2017 U.S. Dist. LEXIS 184093, *2 ("district court has the authority to enter default judgments for failure...[to] comply with rules of procedure"); *Wahl*, 773 F.2d at 1174 (same); *Flaksa*, 389 F.2d at 887 (courts may enter default judgment for failure to comply with orders or procedural rules).
[6] *See also KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 934 (6th Cir. 2020) (quotation omitted).

4901-2883-3548, v. 2

(6th Cir. 1997))). Upon default judgment, liability is admitted but not damages. *Id.* at *7-8 (citations omitted).

Noncompliance with a Rule 45 subpoena also supports a motion for default judgment. *Golden v. Am. Pro Energy*, No. EDCV 16-891-MWF, 2018 U.S. Dist. LEXIS 237279, *5-6 (C.D. Cali. Feb. 15, 2018). (**Ex. 2**, Subpoenas to Rayco, Bravo, and Laamari and attachment.) Rule 45 provides the Court with authority to hold a person in contempt for failing, "without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Failure to comply with subpoenas permits a Court to impose sanctions under Rule 37 or Rule 45, "up to and including default judgment." *Gutierrez v. Uni Trans, L.L.C.*, No. 21-73 KWR/SCY, 2022 U.S. Dist. LEXIS 230345, *3-4 (DNM Dec. 22, 2022).[7]

Here, Defendants have, among other things, ignored the scheduling order, failed to serve initial disclosures, failed to answer discovery, failed to comply with subpoenaed document requests, refused to answer deposition questions, and violated multiple related Court orders (dated October 9, 2024, and November 27, 2024). (*See* Procedural Statement, *supra*.) Defendants claim a third-party vendor requires payment of $1,000 to give access to Bravo's documents, but Defendants' banking

---

[7] *See also Jones*, 2017 U.S. Dist. LEXIS 184093, *2 ("district court has the authority to enter default judgments for failure...[to] comply with rules of procedure"); *Wahl*, 773 F.2d at 1174 (same); *Flaksa*, 389 F.2d at 887 (courts may enter default judgment for failure to comply with orders or procedural rules).

records show that they possess more than $3,000 that could be used to access the account. (**Ex. 1** at 39-42, 56-59, 64-65, 132.) Ray Laamari repeatedly stated that he does not believe he had to provide any documents on behalf of himself or Rayco. (**Ex. 1** at 30-31, 60, 62-63, 64-65.) The Court's October 9 order required compliance with the subpoenas. Defendants failed to comply by refusing to produce any documents requested by the subpoena. At deposition, Laamari demanded a subpoena if Plaintiffs wanted documents from Defendants, counsel reminded him Defendants already received subpoenas in addition to discovery requests, Laamari said he would produce documents, but he did not. (**Ex. 1** at 114-115, 120.) Defendants' refusal to comply with discovery and the subpoenas has been flagrant and willful.

### C. Default for Violation of Court Orders and Rules.

Default is also appropriate here because a court has "inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees," particularly for "wilfull [sic] disobedience of a court order." *Liberis v. Craig*, 845 F.2d 326; 1988 U.S. App. LEXIS 5455, *15-16 (6th Cir. 1988).[8]

---

[8] *See also Counts v. GM, LLC*, 606 F. Supp. 3d 547, 590-591 (E.D. Mich. 2022) (quoting *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)) (a "district court always has jurisdiction to enforce its own orders" and "manage its proceedings")); *Jones*, 2017 U.S. Dist. LEXIS 184093, *2 ("district court has the authority to enter default judgments for failure...[to] comply with rules of procedure"); *Wahl*, 773 F.2d at 1174 (same); *Flaksa*, 389 F.2d at 887 (courts may enter default judgment for failure to comply with orders or procedural rules).

Violation of orders includes failure to obtain counsel. "By failing to obtain substitute counsel or otherwise respond to the Court's orders, [the party] has demonstrated willful bad faith." *Ningbo S-Chande Imp. & Exp. Co., Ltd. v. Allied Tech., Inc.*, No. 20-10190, 2024 U.S. Dist. LEXIS 177466, *6-7 (E.D. Mich. Sept. 30, 2024). It is well-settled that corporations must be represented by an attorney in federal court. *Hawkins v. Richter*, No. 17-1968, 2018 U.S. App. LEXIS 18541, 2018 WL 4042465, at *2 (6th Cir. July 6, 2018).[9] An individual may proceed *pro se*, but 28 U.S.C. § 1654 does not permit an individual to appear on behalf of an entity. *Bischoff*, 660 F. Supp. 2d at 819.[10] Upon default judgment, the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Id*. at *7-8 (citing *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) (emphasis in original) (citations omitted)). The defaulting party admits liability but not damages. *Id*. (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)).

Defendants have, among other things, ignored the scheduling order, failed to serve initial disclosures, failed to answer discovery, failed to comply with

---

[9] *See also United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969); *Bischoff v. Waldorf*, 660 F. Supp. 2d 815, 820 (E.D. Mich. 2009) ("A corporation must appear by counsel or not at all.") (citing *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970)).

[10] *See also Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984); *Flaksa*, 389 F.2d at 887 (courts may enter default judgment for failure to comply with orders or procedural rules).

4901-2883-3548, v. 2

subpoenaed document requests, refused to answer deposition questions, violated multiple Court orders (dated October 9, 2024, and November 27, 2024), failed to obtain counsel, did not show cause when required, and violated local rules regarding updating contact information. (*See* Procedural Statement, *supra*.) Defendants had funds in their accounts necessary to overcome the purported $1,000 barrier to access of Bravo documents but failed to produce or respond to the document requests and subpoenas. (**Ex. 1** at 39-42, 56-59, 64-65, 132.) Laamari made it abundantly clear that he did not believe he had to provide any documents on behalf of himself or Rayco and he refused to comply. (**Ex. 1** at 30-31, 60, 62-63, 64-65.) Defendants failed to comply with the court rules, subpoenas, and Court orders even to the point of refusing to update their contact information per local rule. Defendants' refusal to comply with the Court's order and rules has been flagrant and willful.

## II.    Relief Requested.

Plaintiffs request the following relief in this motion and the relief in the motions filed simultaneously and seeking coordinated relief.

(1)    A default judgment, including against Defendants in their alternative names, such as Ray Laamari, Rahim Laamari, and Abderrahim Laamari.

(2)    An order that Defendants pay pre- and post-judgment interest on any award;

(3)    Costs and attorneys' fees, including pursuant to 49 U.S.C. § 14704(e), which attorney fees were $141,916.75 as of January 1, 2025;

(4)    Set a schedule for a hearing on an award of costs, restitution, damages,

4901-2883-3548, v. 2

including punitive damages, and disgorgement in an amount to be determined at a hearing on the matter or provide an award in the following amounts:

    A. Fetinci - $178,413
    K. Hujdur - $139,768
    M. Fetic - $226,748
    N. Mustafic - $20,442
    Total = $565,371

(5)    A judgment declaring that Defendants are in violations of the statutes, regulations, and agreements as alleged in the Complaint;

(6)    Order relief pursuant to Fed. R. Civ. P. 37 and 45, including
    (a) directing the allegations of the Complaint be taken as established for purposes of the action, as the prevailing party claims;
    (b) prohibiting the Defendants from opposing the claims in the Complaint and from introducing designated matters in evidence;
    (c) striking Defendants' pleadings in whole or in part;
    (d) rendering a default judgment against Defendants; and
    (e) treating as contempt of court the failure to obey its orders.

(7)    Grant such other or further relief as may be appropriate, including all other statutory remedies and common law remedies set forth elsewhere in the Complaint and Plaintiffs' pending motions.

                              Respectfully Submitted,

                              HERTZ SCHRAM PC

                               */s/ Daniel W. Rucker*
                              By:  Steve J. Weiss (P32174)
                                     Daniel W. Rucker (P67832)
                              Attorneys for Plaintiff
                              1760 S. Telegraph Road, Suite 300
                              Bloomfield Hills, MI  48302
                              (248) 335-5000

Date: January 6, 2025

4901-2883-3548, v. 2